Christine M. WILLIAMS, Appellant,

v.

James Michael WILLIAMS and Connie Ballow, f/k/a Connie Harrison, Appellees.

No. S–11499.

Supreme Court of Alaska.

Jan. 20, 2006.

Rehearing Denied March 16, 2006.

Christina appeals, arguing that (1) her suit was timely because the statutes of limitations for her claims should have been tolled under the doctrine of equitable estoppel; and (2) her suit was timely under the statutory fraud discovery provision of AS 13.06.030. We hold that the suit was untimely and affirm the judgment of the superior court.

## II. FACTS AND PROCEEDINGS

James Victor "Pete" Williams married Patricia Williams and had four children: Connie, James Michael "Mike", Haze, and Christine. Pete executed a will in 1970 leaving his estate to Patricia, and in her absence to his four children in equal shares. In 1971 Pete and Patricia moved to Valdez. A few years later Pete built and began operating the Totem Inn, a hotel and restaurant in Valdez. Pete and Patricia divorced in 1978. Following the divorce, Mike and Connie remained in Alaska while Haze and Christine moved out of state with Patricia. At the time of the divorce, Pete held all the shares of stock issued in the Totem Inn.

In 1982 Pete discussed with his attorney transferring his stock in the Totem Inn to Mike and Connie, but did not do so. In 1983 he discussed gifting $10,000 worth of stock to each of his four children in equal shares. Pete and Connie (as corporate secretary) signed four stock certificates in December 1983 with the names of each of the four children but without the stock share amounts. The shares were never transferred. By 1984 Pete was living in Florida and the day-to-day business of the Totem Inn was conducted by Mike and Connie.

In 1984 and 1985 Pete discussed using an annuity agreement to transfer his Totem Inn stock free of gift tax and to remove the corporation from the estate. The parties dispute whether Pete made a final decision on how to allocate the stock, but the superior court found that Pete "eventually decided to transfer all of his shares in Totem Inn, Inc. to Mike and Connie in return for a monthly annuity payment based on his life expectancy in order to avoid federal estate taxes." The superior court further found that Pete asked his attorney to prepare an annuity agreement and a new will, and originally intended

Michael W. Flanigan, Walther & Flanigan, Anchorage, for Appellant.

Randall E. Farleigh, Choquette & Farleigh, LLC, Anchorage, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

Seventeen years after her father's death, one of four siblings challenges an inter vivos transfer of stock in the family business from her father to two of her siblings. This transfer was made shortly before her father's death and effectively removed the stock from his estate. The case was dismissed on statute of limitations grounds. The daughter

to fly to Anchorage to sign the documents, but he did not take the trip because he was diagnosed with cancer in early January 1986.

On January 18, 1986, Connie traveled to Florida to visit her father and brought with her the stock certificate and annuity agreement. On January 20 Pete signed the transfer form on the back of the stock certificate. The form was otherwise blank and did not include the names of the transferees. The superior court found that Pete also signed the annuity agreement on January 20, despite Christine's allegation that the signature was forged.

Pete died on February 2, 1986. Mike, Haze, and Christine arrived in Florida after Pete's death. On the advice of one of the family attorneys, Mike signed the annuity agreement even though Pete was already dead. Connie later returned the stock certificate and the signed annuity agreement to the attorney, who transferred Pete's shares to Mike and Connie using two of the four stock certificates that were created and signed in 1983.

While in Florida, soon after Pete's death, Christine asked Connie if Pete had a will. Christine alleges that Connie told her that Pete had not made a will; Connie maintains that she told her sister it was an inappropriate time to discuss it, and told her that she did not know if there was a will. Christine further alleges that Mike and Connie never told her about the annuity agreement or the stock transfer. Connie told Christine that it was Pete's dying wish that all of his children work at the Totem Inn and get an equal share, and promised that Christine would receive an ownership interest in the Totem Inn if she worked there.

After Pete's death, Haze worked at the Totem Inn for several years and was given a one-third share of the Inn.[1] Christine was seventeen and still in high school at the time of her father's death in 1986. She returned to Valdez to work at the Totem Inn for brief periods in 1987 and 1989. For the next nine years she pursued "intermittent periods of higher education and other employment opportunities."

Mike hired a Florida attorney several years after Pete's death to probate the estate, which included the property on which Pete had been living when he died. The inter vivos stock transfer was not included as part of the estate. Mike was appointed personal representative of Pete's estate in 1992. Christine alleges that she did not receive a copy of Pete's will during the Florida probate proceedings. But the probate attorney testified that it was his normal practice to mail copies of the will to the heirs. In 1995 Christine executed a document acknowledging her receipt of one-fourth of the entire estate and consenting to discharge Mike as personal representative.

In 1998 Christine returned to Valdez to work at the Totem Inn, but was told by her siblings that it was now too late for her to expect to receive shares of the Inn. Christine worked intermittently as an employee of the Totem Inn from 1998 to 2001.

In March 2003 Christine filed suit against Mike and Connie for fraud. She later amended her complaint, alleging, *inter alia*, undue influence, false and fraudulent misstatements to Pete, lack of mental competence, lack of consideration, false and fraudulent misrepresentations, fraudulent concealment, and breach of fiduciary duty. In August 2003 Mike and Connie moved for summary judgment on the basis of the statute of limitations. The superior court denied this motion in January 2004, concluding that an evidentiary hearing was necessary to resolve the factual issues involved in the application of the statutes of limitations.

In March 2004, after a two-day evidentiary hearing, the superior court granted summary judgment, concluding that Christine did not commence suit within the applicable statutes of limitations. The court issued findings of fact and conclusions of law, as well as a final judgment for the defendants dismissing the complaint with prejudice in April 2004. Christine appeals.

## III. DISCUSSION

Christine's complaint includes claims of undue influence, lack of mental competence,

---

1. Haze subsequently sold his shares back to Mike and Connie.

lack of consideration, fraudulent misrepresentations, and breach of fiduciary duty. Christine argues that the superior court's finding that her lawsuit was untimely was erroneous because (1) the statutes of limitations for her claims should have been tolled under the doctrine of equitable estoppel; and (2) her suit was timely under the statutory fraud discovery provision of AS 13.06.030.[2]

The parties do not agree on which statutes of limitations apply. Christine argues that a variety of limitations statutes apply, ranging from two to six years. Mike and Connie argue that the gravamen of Christine's complaint is an action to recover fraudulently obtained personal property, namely her share in the Totem Inn, and therefore that the two-year tort statute applicable to claims accruing after August 7, 1997 applies.[3] But the parties' disagreement over the applicable statutes of limitations does not affect the outcome of this case. Even if the equitable estoppel doctrine applies, Christine should have discovered the grounds for her claim more than six years before she filed suit.

## A. Standard of Review

▮ In this case, the superior court held an evidentiary hearing because resolution of the statute of limitations issues was dependent on factual questions.[4] We review findings of fact under the clearly erroneous standard.[5] Questions of law are reviewed de novo.[6]

## B. The Trial Court's Evidentiary Hearing

▮ As we concluded in *John's Heating Service v. Lamb,* when the date on which the statute of limitations begins to run presents a factual question, it ordinarily should not be resolved as a matter of law.[7] In *John's,* we noted that this question should usually be resolved "at a preliminary hearing in advance of trial."[8] The superior court in the present case properly held such a hearing upon determining that genuine issues of material fact were raised on the question whether the various statutes of limitations had run. But we also recognize that addressing the substantive merits of a case in such a preliminary evidentiary hearing can create considerable tension with the procedural rights to which parties are entitled, including the right to a jury trial.[9] In this case, the superior court found it necessary to reach the underlying question of fraud in order to resolve Christine's statutory tolling argument. But the superior court also reached a number of alternative conclusions on the various claims, determining that even if the facts were as alleged by Christine, the statute of limitations would still have run well prior to the filing of her lawsuit. Because Christine does not object on appeal to the procedure used by the superior court, we need not address the question whether the superior court properly held an evidentiary hearing reaching the merits of the underlying claim here.

## C. Equitable Estoppel

▮ Christine argues that her delay in filing suit was caused by her reliance on misrepresentations by Mike and Connie about the existence and content of their father's will, the existence of and circumstances surrounding the stock transfer, and their allegedly false statement that, in keeping with their father's testamentary intent, Christine would be given an equal share in

---

2. Christine also takes issue with a number of the court's factual findings.

3. AS 09.10.070(a)(3). Actions to recover personal property that accrued before the 1997 amendments are subject to a six-year statute of limitations. *Id.*

4. *See John's Heating Serv. v. Lamb,* 46 P.3d 1024, 1033 n. 28 (Alaska 2002) (noting that the judge acts as factfinder in determining the applicability of statute of limitations); *Pedersen v. Zielski,* 822 P.2d 903, 907 n. 4, 908 (Alaska 1991).

5. *See John's Heating Serv.,* 46 P.3d at 1033.

6. *Lawson v. Lawson,* 108 P.3d 883, 885 (Alaska 2005).

7. 46 P.3d at 1031.

8. *Id.* at 1033 n. 28.

9. *See* Alaska Const. art. I, § 16 ("In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law.").

the Totem Inn if she worked at the Inn for an unspecified time. Christine argues that her suit was timely under the doctrine of equitable estoppel.

■■■■ "A party who fraudulently conceals from a plaintiff the existence of a cause of action may be estopped to plead the statute of limitation if the plaintiff's delay in bringing suit was occasioned by reliance on the false or fraudulent representation."[10] To establish equitable estoppel, the plaintiff must show (1) fraudulent conduct, which may take the form of either an affirmative misrepresentation or a failure to disclose facts where there is a duty to do so; (2) justifiable reliance; and (3) damage.[11] Plaintiffs cannot invoke estoppel "unless [they have] exercised due diligence in attempting to uncover the concealed facts."[12] In *Palmer*, this court stated:

> In the context of alleged fraudulent concealment, whether in the form of an action for deceit or in the context of a claim for equitable estoppel, the due diligence requirement involves a determination of when the plaintiff discovered or reasonably should have discovered the fact that evidence of a potential cause of action had been fraudulently concealed. . . . [A] party should be charged with knowledge of the fraudulent misrepresentation or concealment only when it would be utterly unreasonable for the party not to be aware of the deception.[13]

### 1. Concealment of the 1970 will

Christine's estoppel claim is based on three alleged misrepresentations and acts of concealment. First, she alleges that Mike and Connie concealed the existence and content of the 1970 will. Christine points in particular to a conversation she had with Connie soon after their father's death that led Christine to believe that her father had not made a will. Christine's argument appears to be that if she had known that the will provided for each sibling to be treated equally,[14] she would not have accepted Mike and Connie's ownership of the Totem Inn and the requirement that she work at the Inn to receive a share. The superior court found that neither Mike nor Connie concealed or misrepresented Pete's 1970 will. The superior court also found that "[t]he representation which Christine alleges was made by Connie to her on the day of her father's death, to the effect that Pete left no will, was not made; rather, Connie told her that it was not the time to make such an inquiry."

There is substantial evidence in the record to support these findings. There was conflicting testimony about the substance of the conversation between Connie and Christine after their father's death. The superior court did not clearly err in making a credibility determination by accepting Connie's assertion that she was unaware of the will at the time of the conversation and that she did not tell Christine definitively that there was no will. Christine testified that after that conversation she did not ask Mike or Connie about a will. Christine alleges that she did not receive a copy of the will during the Florida probate proceedings and seems to suggest that this constitutes concealment by Mike because as personal representative of the estate he had a duty to give her a copy. But the estate attorney stated in his deposition that it was his normal practice to mail copies of the will to the heirs and that although he did not have a copy of the correspondence—and was not required under Florida law to file proof of this mailing—he was "almost certain that I mailed it to the four [siblings]." There is no evidence in the record suggesting that Mike concealed the contents of the will from Christine during the probate proceedings.

---

10. *Palmer v. Borg–Warner Corp.*, 838 P.2d 1243, 1247 (Alaska 1992).

11. *Waage v. Cutter Biological Div. of Miles Labs., Inc.*, 926 P.2d 1145, 1149 n. 7 (Alaska 1996).

12. *Id.* at 1151 (quoting *Palmer*, 838 P.2d at 1250).

13. *Palmer*, 838 P.2d at 1251.

14. The will, which was made before Pete's divorce, left everything to his wife, and secondarily to his children in equal shares.

Even assuming that Mike and Connie concealed or misrepresented the will, Christine should have known in 1995 when she received one-fourth of the estate through the Florida probate process and executed a consent to discharge Mike as personal representative of the estate that the will existed, that under the probate proceedings she received a share equal to her siblings, and that the Totem Inn was not a part of the probated estate. For this reason, the superior court did not err in holding that it was unreasonable for Christine to delay making an inquiry or filing suit challenging the ownership of the Totem Inn based on the will after she had concluded her participation in the probate process. If Christine should have been aware of any concealment or misrepresentation concerning the existence or content of the will in 1995, her suit filed in March 2003 would be untimely even if, as she claims, a six-year statute of limitations is applicable.

### 2. Concealment of the stock transfer

■ Christine also argues that equitable estoppel applies because Mike and Connie concealed the stock transfer that gave them ownership of the Totem Inn and the details of that transfer. The superior court held that Mike had no duty as personal representative of the estate to disclose the stock transfer. Even assuming that he did have such a duty, Christine should have known by 1995 that she had received an equal share of the probated estate and that the Totem Inn was not included in that estate. At that point Christine should have inquired about the legal basis for Mike and Connie's ownership of the Totem Inn. Christine did not exercise the due diligence required to maintain an equitable estoppel claim based on the alleged concealment of the stock transfer.[15]

### 3. Misrepresentations about Christine's share of the Totem Inn

■ Finally, Christine argues that equitable estoppel applies because of alleged misrepresentations made by Mike and Connie

that she would be given an equal share of the Totem Inn if she worked for an unspecified time in the business. The superior court found that the statements by Mike and Connie that they would give Christine an equal share of the Totem Inn if she worked for a substantial period of time were true and therefore not misrepresentations. This finding is supported by the record. Christine acknowledges that she worked at the Totem Inn intermittently, with no continuous period of employment of more than eight months. Mike and Connie did give Haze, the fourth sibling, an equal share of the Totem Inn after he had worked there for several years. And from her own testimony, it is clear that Christine understood that the promise that she would receive shares if she worked at the Inn represented Mike and Connie's attempt to implement their father's last wishes as orally communicated to them, not a legal arrangement arising from a will or other document.

Christine also alleges that Mike and Connie did not inform her that there was a time limit on when she could work at the Totem Inn and redeem her shares, and she claims to have been under the impression that this option would always be open to her. To the extent that Christine's claim can be viewed as a breach of contract action based on the oral promise, that claim is time-barred. She was informed in 1998 by Mike, Connie, and Haze that it was too late for her to expect to receive shares if she worked at the Inn. The statute of limitations for contract actions accruing on or after August 7, 1997 is three years.[16] Any contract claim in Christine's 2003 complaint based on Mike and Connie's breach of their promise in 1998 is untimely.

We therefore hold that the superior court did not err in concluding that equitable estoppel does not apply to toll the statute of limitations for Christine's claims.

### D. Statutory Fraud Tolling Provision

■ Christine also argues that her suit is timely under the statutory fraud toll-

---

**15.** See Waage, 926 P.2d at 1149 ("Once a plaintiff discovers or reasonably should discover that evidence has been fraudulently concealed, [the plaintiff] risks losing the protection of equitable

estoppel unless [the plaintiff] takes timely action.").

**16.** AS 09.10.053; ch. 26, §§ 4, 55, SLA 1997.

ing provision in AS 13.06.030. This statute provides that where fraud has been perpetrated in connection with a probate proceeding, any claim against the perpetrator of the fraud must be brought within two years after the discovery of the fraud.[17] Unlike the doctrine of equitable estoppel, AS 13.06.030 does not include a due diligence requirement. Christine argues that the inter vivos stock transfer was carried out illegally, pointing to the unusual circumstances surrounding the transfer: the transfer occurred just days before Pete's death and in the presence of Connie, one of the beneficiaries of the transfer; the back of the stock certificate that Pete signed did not include the names of the beneficiaries, which were later added by his attorneys; and Mike did not sign the annuity agreement until after Pete's death. She argues that not including the Totem Inn stock as part of the probated estate constituted fraud in connection with the probate proceeding. She contends that she did not learn of the alleged fraud until after she filed the complaint in this case, and that her complaint was therefore timely under AS 13.06.030.

The superior court's order appears to have resolved the factual questions regarding whether the transfer was fraudulent in favor of the defendants.[18] The court found that Pete decided to transfer all his shares in the Totem Inn to Mike and Connie in return for a monthly annuity payment from them, which suggests that even though Pete signed blank forms he was not defrauded since they were later filled out according to his instructions. The superior court also found that "Mike and Connie did not conceal the annuity agreement that transferred the Totem Inn to them" and stated that it "[found] no fraud, misrepresentation, or inadequate disclosure related to settlement of Pete's Florida estate by Mike." Christine did not provide evidence to challenge that finding as clearly erroneous.

Furthermore, Pete transferred the stock legally before his death. Since the superior court found that the transfer was consistent with Pete's wishes and his prior instructions to his attorneys, Pete was not defrauded. And under Alaska law, endorsing a stock certificate in blank and delivering it to the transferee is sufficient to effect the transfer. Alaska Statute 45.01.201 defines a "purchaser" to include a person who takes through a sale, gift, or other voluntary transaction. Alaska Statute 45.08.304 provides that an endorsement may be made in blank, and that such an endorsement constitutes a transfer upon delivery. Under AS 45.08.301, delivery to a purchaser occurs when the purchaser acquires possession of the security certificate. Under AS 45.08.206, "[if] a security certificate contains the signatures necessary to its issue or transfer but is incomplete in another respect ... a person may complete it by filling in the blanks as authorized."[19] Thus, by endorsing the certificate in blank and giving it to Connie, Pete effectively transferred the stock.[20]

---

**17.** AS 13.06.030 provides:

> Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under AS 13.06—AS 13.36 or if fraud is used to avoid or circumvent the provisions or purposes of AS 13.06—AS 13.36, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not. Any proceeding must be commenced within two years after the discovery of the fraud, but no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of the commission of the fraud. This section has no bearing on remedies relating to fraud practiced on a decedent during the decedent's lifetime that affects the succession of the decedent's estate.

**18.** As noted earlier, the superior court effectively resolved the case on the merits by deciding this issue, a result that creates considerable tension with Christine's right to a jury trial. But, as we have observed, we need not address this issue, as Christine does not raise this point on appeal. *See Jeffries v. Glacier State Tel. Co.*, 604 P.2d 4, 7 n.8 (Alaska 1979) (treating as abandoned those points not discussed in appellant's brief).

**19.** The statutes discussed here are the current statutes. The statutes were somewhat different at the time of the transfer, but include the same basic provisions that an endorsement may be made in blank, that delivery occurs when the purchaser acquires possession, and that an incomplete certificate may be filled in as authorized. AS 45.08.206, .308, .313 (1986).

**20.** Christine argues that the court clearly erred in finding that Pete signed the annuity agreement

Christine points out that properly executed stock transfers made as a result of fraud or undue influence can be found invalid. But here the superior court found that the stock transfer was consistent with Pete's wishes; the potential fraud at issue here involves the manner in which the transfer was accomplished, not whether Pete was fraudulently induced to make the transfer. If Pete's endorsement on the stock certificate was sufficient to transfer the stock, that stock was properly excluded from the estate probated in Florida. For that reason, the Totem Inn was not part of Pete's estate at the time of his death, and no fraud was committed in connection with the estate as required for tolling under AS 13.06.030. We therefore hold that the tolling exception in AS 13.06.030 does not apply to Christine's claims.

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the superior court.

because she presented testimony from a handwriting expert questioning the authenticity of the signature. But there was testimony supporting the court's finding that Pete signed the annuity agreement and there was therefore no clear error.