David and Joyce JACOB, Appellants,

v.

STATE of Alaska, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, OFFICE OF CHILDREN'S SERVICES, and Marcie Kennai, Deputy Commissioner, Appellees.

No. S–11663.

Supreme Court of Alaska.

March 7, 2008.

James J. Davis, Jr., Alaska Legal Services Corporation, Anchorage, for Appellants.

Megan R. Webb, Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

David and Joyce Jacob are the grandparents of three children who were taken into custody by the Office of Children's Services (OCS) in 2000. Despite dozens of timely attempts to communicate with OCS seeking information about their grandchildren and requesting that the children be placed in their home rather than remain in foster care, and despite the Jacobs' status as joint custodians of their grandchildren under an order of the superior court in Washington, the Jacobs were not given notice of and did not have an opportunity to be heard in any of the Child in Need of Aid (CINA) hearings which occurred during the first three and one-half years that their grandchildren were in OCS's custody. In 2004 the Jacobs retained counsel and brought a separate suit seeking declaratory judgment and injunctive relief regarding their rights to receive notice and be heard in their grandchildren's CINA proceedings. The superior court dismissed the suit, instructing the Jacobs to instead inter-

vene in the CINA proceedings. They have since done so.

The Jacobs appeal the superior court dismissal, arguing that they have not received all the relief to which they were entitled and seeking broader injunctive relief to correct an allegedly systemic failure by OCS to provide grandparents with statutorily required notice. OCS concedes that the Jacobs may be entitled to declaratory relief but argues that most of the Jacobs' case is now moot because the Jacobs have received all the relief to which they are entitled and because the Jacobs lack standing to seek injunctive relief on the broader claims.

We accept the state's concession on the issue of declaratory relief. We also conclude that there is a present, live controversy in which the Jacobs have a continuing stake and that the Jacobs will benefit from a declaratory judgment that OCS violated their statutory rights. Accordingly, we accept the state's concession on the issue of declaratory relief and reverse and remand for entry of declaratory judgment in the Jacobs' favor. We hold that all other issues are moot due to the Jacobs' subsequent intervention in their grandchildren's CINA proceedings.

## II. FACTS AND PROCEEDINGS

### A. Facts[1]

■ Minors A.K., D.L., and E.H. are the grandchildren of David and Joyce Jacob. The mother of the three children struggled with drug dependency and as a result the Jacobs often assumed care of their grandchildren. In 1997 a Washington state court granted the Jacobs joint custody of the children with their mother.[2] In 1999 the Jacobs agreed that the children could move to Alaska with their mother because she had been sober for quite some time. But in 2000 the mother relapsed, and in October 2000 the children were taken into custody by the Office of Children's Services (OCS).[3]

When the Jacobs learned from the children's mother in December 2000 that OCS had custody of the children, they immediately sent a letter to OCS stating that they were the children's grandparents, had joint custody, and wanted OCS to place the children in their care. OCS did not respond to the letter and the children remained in foster care. Between December 2000 and March 2004 the Jacobs made dozens of attempts to communicate with OCS, including leaving messages for the caseworker and the caseworker's supervisor, Tim Fox. On one occasion, Fox allegedly told the Jacobs that they were too old to care for the children.

Over the next three and one-half years OCS never sent the Jacobs notice of any court hearings regarding their grandchildren's CINA proceedings, including those that occurred after the September 2001 effective date of amendments to the CINA statutes requiring grandparent notice.[4] During that time period the Jacobs never filed a motion to formally intervene in their grandchildren's CINA cases and never filed a petition requesting that the children be placed in their care.

### B. Proceedings

In March 2004 the Jacobs filed a complaint for declaratory and injunctive relief in supe-

---

1. The following facts are taken largely from the Jacobs' complaint. Because we are reviewing a complaint that was dismissed, we treat the factual allegations of the complaint as if they were true. *Lowell v. Hayes*, 117 P.3d 745, 750 (Alaska 2005).

2. Despite the importance of the Jacobs' status as custodians of the children, the Jacobs specifically seek redress as grandparents and not as individuals with legal custody.

3. For ease of reference, we refer to both OCS and its predecessor agency, the Department of Family and Youth Services, as OCS.

4. AS 47.10.030(d), effective September 23, 2001, provides in relevant part:

... [T]he department shall give advance written notice of all court hearings in a child's case to a grandparent of the child if
(1) the grandparent has contacted the department, provided evidence acceptable to the department of being the child's grandparent, requested notice about the hearings in the child's case, and provided the department with a current mailing address; or
(2) the department is aware that the child has a grandparent and the grandparent's mailing address is on file with the department.
A simultaneous amendment to the general notice provision, AS 47.10.030(b), added qualifying grandparents to the list of individuals who "shall be given notice" regarding a child's proceedings. Ch. 43, § 1, 2, SLA 2001.

rior court. They sought judgment declaring that OCS violated Alaska law by failing to place their grandchildren in their care and by failing to provide them with notice of their grandchildren's CINA proceedings and permanency hearings. The Jacobs also sought injunctive relief compelling OCS to provide them and "all other grandparents similarly situated" written notice of all hearings in CINA proceedings involving their grandchildren, as well as an opportunity to be heard in their grandchildren's permanency hearings. The Jacobs also requested that the court place their grandchildren with them until and unless OCS could show by clear and convincing evidence that such placement would result in physical or mental injury to the children. The Jacobs requested court costs and reserved the right to later seek attorney's fees.

The state responded with a motion to dismiss under Alaska Rule of Civil Procedure 12(b), alleging lack of jurisdiction, improper venue, lack of standing, and failure to state a claim upon which relief may be granted. The Jacobs opposed the motion to dismiss and cross-filed a motion for partial summary judgment.

Superior Court Judge John E. Reese granted OCS's motion to dismiss and declared the Jacobs' summary judgment motion moot. Judge Reese found that "[a]lthough the department's failure to give them notice is a serious oversight, the Jacobs' due process rights have not been violated, since . . . they may request placement in the CINA case."

The Jacobs have subsequently intervened in their grandchildren's CINA cases and pursued this appeal. OCS argues that the appeal is moot because of the intervention in the CINA cases. The Jacobs contend that they are seeking relief that cannot be granted within the CINA cases, and that to the extent their complaint is moot, we should apply the public interest exception to the mootness doctrine.

During oral argument the parties altered their positions somewhat, with OCS indicating that it had no objection to our vacating the order of dismissal and remanding for entrance of an order of declaratory judgment in favor of the Jacobs. The Jacobs also stated that they sought no relief broader than that necessary to satisfy their own claims.

## III. STANDARD OF REVIEW

We review the superior court's grant of a motion to dismiss pursuant to Rule 12(b)(6) *de novo*, "construing the dismissed complaint liberally, and assuming the truth of the facts it alleges."[5] Such dismissals "are viewed with disfavor and should only be granted on the rare occasion where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.' "[6] We review the superior court's dismissal of a declaratory judgment action under the abuse of discretion standard.[7] The trial court's decision to grant or deny injunctive relief is likewise reviewed for an abuse of discretion.[8]

We apply our independent judgment to questions of law, adopting "the rule of law most persuasive in light of precedent, reason, and policy."[9] Mootness presents a question of law to which we apply our independent judgment.[10] Standing and ripeness are also questions of law, calling for independent judgment review.[11]

## IV. DISCUSSION

### A. The Jacobs Are Entitled to Declaratory Relief.

The Jacobs sought a judicial declaration that OCS violated their statutory rights by

---

**5.** *Lowell,* 117 P.3d at 750.

**6.** *Id.* (quoting *Angnabooguk v. State, Dep't of Natural Res.,* 26 P.3d 447, 451 (Alaska 2001)).

**7.** *See id.*

**8.** *Betz v. Chena Hot Springs Group,* 657 P.2d 831, 837 (Alaska 1982).

**9.** *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**10.** *Peter A. v. State, Dep't of Health and Soc. Servs., Office of Children's Servs.,* 146 P.3d 991, 994 (Alaska 2006).

**11.** *Gilbert M. v. State,* 139 P.3d 581, 586 (Alaska 2006).

failing to place their grandchildren in their care, by failing to give them notice of all the court hearings in the CINA cases, and by failing to give them notice and an opportunity to be heard in the permanency hearings. In his order Judge Reese began by noting that the CINA statutes (1) indicate a clear preference for placing children with relatives rather than in foster care and (2) include grandparents in the list of parties who must receive advance notice of CINA proceedings. Next, Judge Reese noted OCS's concession that the Jacobs did not receive notice of hearings held after the September 2001 effective date of the amendments requiring such notice. Finally, Judge Reese concluded that "the department's failure to give them notice is a serious oversight."

The state argues that with these statements "the trial court essentially granted the declaratory relief." We disagree. The superior court dismissed the Jacobs' claims and thus did not create an enforceable order for the Jacobs to use in the CINA proceedings. Moreover, the superior court's statements were heavily qualified by its subsequent statement that "the Jacobs' due process rights have not been violated, since ... they may request placement in the CINA case."

 Because the Jacobs never sought a declaration specifically regarding their due process rights, we decline to comment on this issue extensively. We do note, however, that notice of proceedings and a meaningful right to be heard are essential to due process,[12] and that there are situations in which the right to intervene in the late stages of a CINA case will be insufficient to cure the prejudice of the initial due process violation.[13] Timely notice and opportunity to be heard are especially important in situations involving the placement of children.

Here the Jacobs were not given notice of any of the initial CINA hearings involving their grandchildren. While the crucial laws

regarding grandparent notice did not take effect before the initial decisions concerning their grandchildren were made, we note that from an equitable standpoint the Jacobs did not receive an opportunity to be heard in this case until it was already too late. The Jacobs were not consulted for early placement despite their status as legal custodians and concerned relatives of the children. By the time they navigated their way through the web of bureaucracy, retained counsel, and entered a courtroom, many years had passed—an amount of time even more significant for children—and their grandchildren had formed bonds with their foster parents such that an OCS home study concluded that it was not in the children's best interest to move into the Jacobs' home. We do not have sufficient facts to determine whether the lapse of time was prejudicial to the Jacobs, nor to determine whether the children ought to have been placed with them initially, but we will consider whether the superior court erred when it dismissed the Jacobs' claim for a declaratory judgment that recognizes that OCS violated their statutory rights.

OCS argued in its brief that we should dismiss the declaratory judgment portions of the Jacobs' appeal on mootness grounds. But at oral argument the state conceded, in accordance with its briefed position that declaratory judgment had already been granted, that it had no objection to an order vacating the dismissal and remanding for an entry of declaratory judgment for the Jacobs. Given the disturbing factual history of this case, the state's concession appears to be well-taken.

 "A claim is moot if it has lost its character as a present, live controversy."[14] Where the party bringing the action would not be entitled to relief even if successful, there is no "case or controversy" for us to resolve.[15] Issues are moot where the appel-

**12.** *Evans v. Native Village of Selawik IRA Council,* 65 P.3d 58, 60 (Alaska 2003).

**13.** *Cf. Matanuska Maid, Inc. v. State,* 620 P.2d 182, 193 (Alaska 1980) (holding that where contestant actually appears and presents his claim no due process violation has occurred *"assuming the inadequacy of notice in the present case did*

*not hinder preparation or presentation of arguments ")* (emphasis added).

**14.** *Peter A.,* 146 P.3d at 994.

**15.** *Id.* (quotation omitted).

lant has already received relief.[16] "Mootness can also occur when 'a party no longer has a personal stake in the controversy and has, in essence, been divested of standing.' "[17]

■ The Jacobs' claim for a declaratory judgment is not moot because the Jacobs retain an ongoing stake in a present, live controversy. A declaration of the Jacobs' rights will continue to benefit them in their dealings with OCS. We are troubled by OCS's history of refusal to provide the Jacobs with notice of agency decisions or actions relating to their grandchildren, and resistance to including the Jacobs in their grandchildren's CINA proceedings. We also recognize that, given this history, the Jacobs' current status as interveners in their grandchildren's remaining CINA cases does not preclude the possibility that OCS will again fail to provide the Jacobs with notice or an opportunity to be heard. For example, although the Jacobs' eldest grandchildren are currently under the guardianship of their foster parents, OCS could again violate the Jacobs' rights if the agency fails to notify the Jacobs of any disruption in the guardianship or fails to consider the Jacobs first in priority for a new placement. In addition, the remaining CINA proceeding for the Jacobs' youngest grandchild is still under way. Although the Jacobs currently enjoy intervener status in those proceedings, OCS could again violate the Jacobs' rights if the agency fails to provide them with notice and an opportunity to participate in any additional proceedings that become necessary in the future. A declaratory judgment from the superior court that acknowledges the failure of OCS to meet its statutory duty to the Jacobs and that specifically recognizes the Jacobs' rights to receive notice of future OCS hearings relating to their grandchildren will materially benefit the Jacobs.

As noted above,[18] the state conceded at oral argument that it had no objection to an order vacating the dismissal and remanding for an entry of declaratory judgment for the Jacobs. We do so now, because the Jacobs are entitled to judicial declaration that they have a right to notice of any CINA proceedings involving their grandchildren. The Jacobs are also entitled to a declaration that their right to notice was violated by OCS when they did not receive notice after the September 2001 effective date of the amendments requiring such notice.

### B. The Remaining Injunctive Relief Requests Are Moot.

OCS argues that we should dismiss the Jacobs' claims for injunctive relief as moot. As stated above, issues are moot when the appellant has already received relief.[19] OCS contends that the Jacobs' claims for injunctive relief are moot because "they have already received or declined to pursue every item of relief that they requested in the trial court."

### 1. Injunctive relief on their own behalf

■ The Jacobs' initial complaint sought three forms of injunctive relief on their own behalf: (1) notice of all hearings in CINA proceedings involving their grandchildren; (2) notice and an opportunity to be heard in all permanency hearings involving their grandchildren; and (3) immediate placement of their grandchildren unless OCS could show by clear and convincing evidence that such placement would cause physical or mental injury to the children.[20]

Following the superior court's dismissal of their claims, the Jacobs successfully intervened in their grandchildren's CINA cases.

16. *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks,* 48 P.3d 1165, 1168 (Alaska 2002).

17. *Ulmer v. Alaska Restaurant & Beverage Ass'n,* 33 P.3d 773, 776 (Alaska 2001) (quoting 15 MARTIN H. REDISH, MOORE'S FEDERAL PRACTICE ¶ 101.90 (3d ed.1998) ).

18. *See supra* at 1185.

19. *Fairbanks Fire Fighters Ass'n,* 48 P.3d at 1168.

20. As discussed in more detail below, the Jacobs also requested injunctive relief on behalf of other grandparents similarly situated. In its briefing, OCS addressed the Jacobs' personal injunctive relief requests separately from their requested relief on behalf of others. Because the legal theories for each are different, we likewise do, focusing first on whether the Jacobs' request for injunctive relief on their own behalf is moot.

The Jacobs and OCS eventually agreed to a visitation plan that includes having the children spend two to three weeks with the Jacobs every summer. OCS agreed to notify the Jacobs within forty-eight hours if the guardianship placement is disrupted and also agreed to consider the Jacobs first for placement, if needed. The guardianships of D.L. and A.K. were approved by the superior court in January 2006 and OCS subsequently released them from custody. Only E.H., the youngest, remains in OCS custody. In her pending case, the Jacobs have intervener status.

Thus the Jacobs have in the cases of all three grandchildren received the first two categories of injunctive relief that they sought: notice of CINA proceedings and an opportunity to be heard at permanency hearings. Because the Jacobs have intervener status in E.H.'s case, and because our decision today regarding declaratory relief will leave the Jacobs with an enforceable statement of their rights in any future CINA proceedings, the Jacobs present no live controversy here.

■ With respect to the third form of injunctive relief, placement of the children, this matter has been adjudicated and settled by the superior court handling the CINA cases of the older two children and is currently under review for E.H., the youngest child. As previously noted, the Jacobs decided not to request full custody of the children out of concern for their best interests. With respect to E.H., the superior court handling her CINA case has jurisdiction and the Jacobs can exercise their right to be heard within that proceeding. Finally, the Jacobs effectively concede that the superior court handling the CINA case, and not the superior court in which this separate suit was filed, retains proper jurisdiction over E.H.'s status and custody.[21]

The Jacobs argue that the fact that one of the CINA cases is still open makes it "hard to conceive of how this lawsuit is moot." But the crux of their suit below was the denial of their opportunity to be heard, which has since been resolved—to the extent that it could be at this late stage—through the Jacobs' actual participation in various hearings and intervener status. The Jacobs' additional request for custody of E.H., if it is even still desired by the Jacobs, is appropriately evaluated through the remaining CINA proceedings. Because we agree with the state that the Jacobs have either been granted or declined to pursue all the injunctive relief that they requested on their own behalf, we hold that the injunctive relief requests they made on their own behalf are moot.

### 2. Injunctive relief on behalf of similarly situated grandparents

In their briefing the Jacobs argued that they have not received the relief they requested on behalf of similarly situated grandparents. Namely, the court did not issue an injunction compelling OCS to provide similarly situated grandparents with an opportunity to be heard in all relevant CINA proceedings. In oral argument, the Jacobs appeared to retreat from this position to some degree, stating that they were seeking no more relief than necessary for full relief in their own case. Because the Jacobs' requested relief has adequately been addressed, and because the Jacobs did not file a class action suit, we decline to address the Jacobs' request for injunctive relief on behalf of similarly situated grandparents.

### C. Heretofore Unstated Damages Claims

The Jacobs note that had the case been allowed to proceed past the pleading stage they "would have possibly amended their complaint to seek damages." They did not include any damages claim in their complaint to the superior court. The Jacobs argue that because Civil Rule 26 disclosures and discovery have not occurred in this litigation they

---

21. The Jacobs effectively concede that they were not entitled to the third item of injunctive relief that they requested, the placement of their grandchildren. They state, "[w]hile the superior court in this matter could not have entered orders for the Jacobs as to the placement of their grandchildren, such matters being before the CINA court, it plainly had jurisdiction to consider and rule on the Jacobs' other claims. . . ." Thus, the Jacobs appear to waive any appeal of the failure to grant placement of the children.

"have [not] yet had a fair chance to state any tort claim against the OCS." Because the Jacobs provide no legal support for the notion that claims that they have not yet stated could be grounds for reversing dismissal of the case, we decline to address these hypothetical claims or their potential merits.

## V. CONCLUSION

We VACATE the order of dismissal with respect to the declaratory judgment and REMAND for entry of declaratory judgment consistent with this opinion. We AFFIRM on mootness grounds the remainder of the decision.

BRYNER, Justice, not participating.

MATTHEWS, Justice, dissenting.

I agree with the court that the Office of Children's Services violated the Jacobs' rights by failing to provide them notice of their grandchildren's CINA proceedings and permanency hearings. I also agree with the court's assessment that this case presents a disturbing set of facts. However, for most of the reasons the court provides in its discussion of injunctive relief,[1] I believe that the Jacobs' appeal seeking declaratory relief is moot.

The CINA proceedings and permanency hearings for the grandchildren are all underway or have already been resolved. The Jacobs successfully intervened in all three cases. As the court recognizes, the crux of the Jacobs' suit was the denial of their opportunity to be heard. This denial has been remedied—to the extent that it can be—and a declaration of rights that are already guaranteed by statute[2] will do little to aid the Jacobs in the future. The court's speculation that OCS might, if the opportunity arose, again disregard the Jacobs' rights should not alter the mootness analysis.[3] The plain fact is that there is no longer a present controversy in this case. For this reason I would dismiss this appeal as moot.

---

1. Op. at 1186–87.

2. AS 47.10.030(b).

3. The fact that this case is no longer ripe can be demonstrated by assuming that a litigant petitioned for declaratory relief based solely on such speculation. A court would deny relief for failure to establish a sufficient likelihood of future injury.