James CLEMENSEN, Appellant,

v.

PROVIDENCE ALASKA MEDICAL CEN-
TER d/b/a Providence Alaska Health
Systems And/Or Providence Health Sys-
tems–Washington, Appellee.

No. S–12920.

Supreme Court of Alaska.

March 27, 2009.

Richard L. Harren, Law Offices of Richard L. Harren, P.C., Wasilla, for Appellant.

Daniel W. Hickey and Anne M. Preston, Gruenstein & Hickey, Anchorage, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

In March 2003 James Clemensen assisted the hospital staff at Providence Alaska Medical Center in convincing his wife, Helen, that she should stay at Providence for an examination of her mental status. James claims that he was assured by Providence that by law the hospital could hold Helen for up to seventy-two hours and that it would not release Helen to anyone but him. The attending physician who evaluated Helen determined that she suffered from Alzheimer's disease and dementia. The day after her admission to the hospital, Helen checked out of Providence and left with her adult daughter, Faye Romer. A few months later, Helen filed for divorce. In March 2006 James filed a complaint against Providence, alleging that he suffered emotional distress caused by Providence's release of Helen to her daughter rather than him. The superior court dismissed James's complaint for failure to state a claim on the basis that economic damages resulting from a divorce action are not recoverable, that the two-year statute of limitations bars James's tort claims, and that James lacked the authority to contract with Providence to prevent it from releasing Helen to her daughter. Because the superior court correctly analyzed the issues, we affirm its dismissal of James's complaint.

## II. FACTS AND PROCEEDINGS

### A. Facts

On March 30, 2003,[1] James Clemensen drove his wife of more than twenty-five years, Helen, to Providence Alaska Medical Center in Anchorage. The day before, Helen had fallen in the couple's home in Big Lake and suffered a hip injury. During the evaluation of Helen's hip, James told the hospital staff that he was concerned that Helen was showing signs of confusion, paranoia, and depression, and he "informed the Providence intake personnel of the suggestions made by at least one healthcare provider that she was exhibiting signs of dementia and/or Alzheimer['s disease]." After James inquired about having Helen's mental status assessed, the hospital staff persuaded him to leave Helen in their care for a mental status examination, and they assured him that by law they could hold Helen for up to seventy-two hours and would not release Helen to anyone but him. Based on these assurances, James assisted the hospital staff in convincing Helen that she should stay at Providence for further examination. James told Providence that he would return to visit Helen the next day.

The attending physician at Providence evaluated Helen, determining that she suf-

---

1. The facts are drawn from James's dismissed complaint. Because the superior court granted Providence's motion to dismiss for failure to state a claim under Alaska Civil Rule 12(b)(6), the factual allegations of James's complaint are assumed to be true. *See Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.,* 177 P.3d 1181, 1184 (Alaska 2008) (noting that we treat a dismissed complaint's factual allegations as if they were true when we review a grant of a motion to dismiss pursuant to Rule 12(b)(6)). But March 30, 2003, may be the incorrect date. In its answer, Providence states that according to its records, Helen arrived at the hospital's emergency room on March 31, 2003, and checked into the hospital's psychiatric observation unit that day.

fered from Alzheimer's disease and dementia, "with agitation and paranoid features," and that she "would not be competent to agree to or refuse medical advice." During Helen's stay at Providence, she was given an antipsychotic medication.

The day after Helen checked into Providence, James called the hospital to ask about her status. A hospital staff member told James that Helen had checked out of the hospital with her adult daughter, Faye Romer. According to the staff member, Helen wanted to leave Providence, and the hospital discharged her to her daughter, who agreed to take care of her. The staff member declined to discuss with James Helen's mental status examination and any treatment Helen received, including the use of the antipsychotic medication.

Before Helen was admitted to Providence, James sought help caring for Helen from family members, including his stepdaughter, Romer, who declined to help and did not believe her mother was in need of care. After Helen was discharged from Providence, Romer told James that "there was nothing wrong with her mother" and that he "was the person in the household with 'the problem.'" Romer did not allow James to visit Helen, who was staying at Romer's home.

In the summer of 2003, James was served with divorce papers. Through the divorce proceedings, James obtained the records of Helen's mental status examination at Providence. Additionally, an Anchorage psychologist who assessed Helen told James that Helen's Alzheimer's disease or dementia caused her to file the divorce action against him.

Helen's guardians and James agreed to dismiss the divorce action in 2007.

## B. Proceedings

On March 31, 2006, James filed a pro se complaint against Providence. Liberally construing the complaint,[2] it alleges four causes of action: negligence, negligent infliction of emotional distress, breach of fiduciary duty, and breach of contract.[3] It claims that since Helen's release from Providence James has endured the loss of her comfort, society, and consortium, as well as the costs associated with litigating the divorce action and mental distress with physical manifestations.

In April 2007 Providence filed a motion under Alaska Rule of Civil Procedure 12(b)(6) to dismiss James's complaint for failure to state a claim upon which relief can be granted.[4] James, who had retained counsel, opposed the motion.

In August 2007 the superior court granted Providence's motion to dismiss. The superior court reasoned that James's contention that he suffered economic damages as a result of the divorce action is not actionable under our holding in *Chizmar v. Mackie.*[5] As to James's claims for noneconomic harm, the superior court held that these claims sound in tort and the two-year statute of limitations for tort actions had already passed when James filed his complaint. The superior court also concluded that there was no legally binding contract between James and Providence, explaining that James could not enter into a contract with Providence that would bind the hospital to comply with custodial restrictions on Helen. The superior court noted that absent guardianship, one adult cannot restrict another adult's freedom of movement, and James's attorney acknowl-

---

**2.** See *Jacob,* 177 P.3d at 1184 ("We review the superior court's grant of a motion to dismiss pursuant to Rule 12(b)(6) *de novo,* construing the dismissed complaint liberally, and assuming the truth of the facts it alleges." (internal quotation marks omitted)).

**3.** James's complaint also alleged that Providence interfered with his prospective economic advantage and contractual relations and that Providence failed to warn him of the results of his wife's assessment, but James does not argue these claims on appeal.

**4.** Alaska Rule of Civil Procedure 12(b)(6) provides in relevant part: "[T]he following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted...."

**5.** 896 P.2d 196, 214 (Alaska 1995) (holding that economic losses resulting from divorce are not recoverable on proximate cause and public policy grounds).

edged that Helen did not have a guardian the day she checked into Providence.

In early October 2007 James filed a motion for reconsideration, arguing that he could have entered into a contract on Helen's behalf under the statutory provisions concerning protection of vulnerable adults and that the statute of limitations was tolled under the discovery rule. Providence opposed this motion, arguing that James's new arguments were waived and inapplicable to his claims.

In mid-October 2007 James filed a motion for a stay of the proceedings and for leave to file an amended complaint that would include Helen's claims arising out of the same circumstances underlying James's claims. In an affidavit filed with the motion, James's attorney confirmed that James had recently been appointed as Helen's co-conservator and that as her co-conservator he was considering bringing her claims against Providence on her behalf. Providence opposed the motion, arguing that whether Helen can bring her own claims against Providence has no bearing on whether James's complaint asserted any legally cognizable cause of action against Providence.

In late October 2007 the superior court denied James's motion for reconsideration for the reasons set forth in Providence's opposition and held that James's motion to stay the proceedings was moot in light of this denial. The superior court entered a final judgment in favor of Providence. James appeals.

**6.** *Jacob*, 177 P.3d at 1184.

**7.** *Id.*

**8.** *Id.* (internal quotation marks omitted).

**9.** *Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 128 (Alaska 2000) (internal quotation marks omitted).

**10.** *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 592 (Alaska 2007).

**11.** *Id.* (internal quotation marks omitted).

**12.** It is possible that James had intended his allegation of breach of fiduciary duty to be a contract action and thus not subject to our analysis of the applicability of *Chizmar v. Mackie* and

## III. STANDARD OF REVIEW

A grant of a motion to dismiss a complaint for failure to state a claim under Alaska Civil Rule 12(b)(6) is reviewed de novo.[6] In reviewing a Rule 12(b)(6) dismissal, we liberally construe the complaint and treat all factual allegations in the complaint as true.[7] "Such dismissals are viewed with disfavor and should only be granted on the rare occasion where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief."[8] In other words, "the complaint need only allege a set of facts consistent with and appropriate to some enforceable cause of action."[9]

We review the trial court's procedural decisions for abuse of discretion.[10] We "will reverse a ruling for abuse of discretion only when left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[11]

## IV. DISCUSSION

### A. James Fails To Allege a Tort Claim upon Which Relief Can Be Granted.

**1.** *Chizmar v. Mackie's* rejection of "wrongful divorce" actions precludes James from seeking damages arising from Helen's divorce action.

James's tort claims of negligence, negligent infliction of emotional distress, and breach of fiduciary duty[12] are based on the

of the two-year statute of limitations for tort actions. Whether a claim of breach of fiduciary duty sounds in tort or contract depends on the source of the fiduciary duty. *See Lee Houston & Assocs., Ltd. v. Racine*, 806 P.2d 848, 852–55 (Alaska 1991) (holding that an action for breach of fiduciary duty arising out of a professional service relationship that primarily involved economic injury sounds in contract and thus the statute of limitations for contract actions applies). Although James's complaint does not suggest the source of the fiduciary duty that he claims Providence owes him, the source may be a duty imposed by tort law or, in the alternative, the alleged contract between James and Providence. Here, we treat his claim of breach of fiduciary duty as a tort action. But even if James had intended his claim to be a contract action, it would still fail for the reasons explained in subpart IV.B.

premise that Providence breached a duty to James by releasing Helen to her daughter and that this breach led to the breakdown of their marriage. As James puts it in his complaint:

> Had Providence released my wife to myself, and, informed me of the diagnosis and assessment made of her, and, informed me of the medications provided to her, their side effects, their benefits, and, if Providence had told me to follow-up with appropriate medical providers, and, make appropriate provisions for her living circumstances given the medications appropriate for her care, there would have been no divorce action filed between us.

In other words, James claims that because of Providence's conduct, he suffered damages from Helen's divorce action.

But we have previously rejected such claims based on divorce. In *Chizmar v. Mackie*, we limited a patient's potential recovery against her physician who misdiagnosed her with having AIDS.[13] Among the damages sought by the patient were those for the economic losses arising from her divorce, which she claimed was the result of the physician's alleged misconduct.[14] We held that as a matter of law the patient could not recover any economic losses that she suffered as a result of her divorce.[15] Recognizing other courts that have uniformly rejected "wrongful divorce" actions on proximate cause and public policy grounds,[16] we agreed with a Wisconsin court's reasons for declining to recognize these actions:

> We find the reasoning in *Prill v. Hampton*, 154 Wis.2d 667, 453 N.W.2d 909, 914–15 (App.1990), persuasive. In *Prill*, the court refused to allow the plaintiff to recover on her claim that her divorce was the result of the injuries sustained by her husband at the hands of the defendant. The court reasoned:
>
> . . . .

Failure of a marriage is rarely attributable to a single cause. In some instances, there may be evidence that the spouse's injuries were, in part, the cause of the marriage's failure. For the jury to properly assess the amount of damages, however, it is necessary to show both a causal relationship and the extent or degree this factor played in the failure of the marriage. Such an inquiry would open to scrutiny very personal issues, not only of the spouse claiming damages, but also of the injured spouse. This factor, along with the difficulty of the jury in determining the extent to which any single cause may have contributed to the failure of the marriage, requires that such claims be rejected.[17]

We further explained that "it is difficult to imagine that a jury will be able to isolate the fault attributable to the third party's actions, from the fault of the two spouses and the weakness inherent in the marriage." [18]

The superior court determined that our holding in *Chizmar* that damages for economic losses resulting from divorce are not recoverable forecloses James from seeking any economic damages suffered as a result of Helen filing for divorce. James argues that *Chizmar* is distinguishable for four reasons: (1) in *Chizmar* the couple divorced but in the present case James and Helen did not divorce, though divorce proceedings depleted their marital assets; (2) the cause of the marital difficulties in *Chizmar* and the present case differ; (3) both spouses in *Chizmar* were mentally competent, whereas in the present case Helen was determined to lack mental competency; and (4) only tort claims were asserted in *Chizmar* but both tort and contract claims were asserted in the present case. None of the differences cited by James, however, is relevant to the rationale of our holding that economic losses resulting from divorce are not recoverable as a matter of law. As in *Chizmar*, James is asking us to

---

**13.** 896 P.2d 196–98, 212–14 (Alaska 1995).

**14.** *Id.* at 198.

**15.** *Id.* at 211–12.

**16.** *Id.* at 211.

**17.** *Id.* at 211–12 (quoting *Prill v. Hampton,* 154 Wis.2d 667, 453 N.W.2d 909, 914–15 (App. 1990)).

**18.** *Id.* at 212 n. 14.

scrutinize very personal issues related to the relationship between himself and Helen in order to determine the degree to which Providence's actions caused Helen to file for divorce. We recognized in *Chizmar* that it is difficult, if not impossible, to attribute the failure of a marriage to a single cause or event.[19]

Providence asks us to extend our holding in *Chizmar* to cover all of the damages alleged by James. Under our rationale in *Chizmar*, damages caused by the filing of a divorce action whether—economic or emotional distress—are not recoverable. But *Chizmar's* holding does not foreclose recovery of damages unrelated to the divorce proceedings.[20] Nonetheless, as we discuss next, James is precluded from recovering any such damages because his tort claims are barred by the statute of limitations.

## 2. The statute of limitations for tort causes of action bars James from bringing his tort claims.

■ The superior court ruled that the statute of limitations for tort actions had already passed when James filed his complaint. We agree. The statute of limitations for a tort action is two years.[21] Ordinarily, the period of limitations for a tort begins to run on the date the plaintiff is injured.[22] In the present case, Helen arrived at Providence on March 30, 2003, and checked out the next day.[23] James learned that Helen had been released to her daughter when he called the hospital on March 31, 2003. Thus, James had until March 31, 2005, to bring his tort claims against Providence.[24] But James did not file his complaint against Providence until March 31, 2006.

■ James argues that his tort suit is timely because the discovery rule applies to toll the running of the statute of limitations. According to James, the statute of limitations did not begin to run until 2005 when he discovered that Helen's Alzheimer's disease or dementia prompted her to file for divorce. But to the extent that James's claims are based on the divorce, they are precluded as a matter of law. Under the discovery rule, "a cause of action accrues when a person discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action."[25] It is not apparent which elements of James's tort claims against Providence he would have discovered had he made a reasonable inquiry as to Helen's mental state. In any event, when Helen was released from Providence on March 31, 2003, James was aware that she was "exhibiting signs of dementia and/or Alzheimer['s disease]." This notice was sufficient to prompt James to make a reasonable inquiry into the relationship between Helen's mental status and the harms that he allegedly suffered after Helen's release from the hospital.

■ James next argues that the superior court erred in failing to hold that Providence was equitably estopped from invoking its statute of limitations defense.[26] James

**19.** *Id.*

**20.** *Id.* at 214 (holding that the appellant may be able to recover damages for negligent infliction of emotional distress but limiting the appellant's potential recovery to preclude any economic damages flowing from her divorce).

**21.** AS 09.10.070.

**22.** *Sengupta v. Wickwire*, 124 P.3d 748, 753 (Alaska 2005).

**23.** Because of the procedural posture of this case, all factual allegations in James's complaint are taken to be true, but according to Providence's records, Helen arrived at the hospital on March 31, 2003. *See supra* note 1.

**24.** *See Solomon v. Interior Reg'l Hous. Auth.*, 140 P.3d 882, 884 (Alaska 2006) (accepting the parties' contention that the former employee's claim accrued on September 9, 1999, and the statute of limitations would normally have run on September 9, 2001); *David v. Sturm, Ruger & Co.*, 557 P.2d 1133, 1134 (Alaska 1976) (noting that the "[p]etitioner was injured on July 3, 1974," and that "[t]he limitation period for this cause of action terminated on July 3, 1976"); *see also Inclusion or Exclusion of First and Last Day for Purposes of Statutes of Limitations*, 20 A.L.R.2d §§ 1–2, at 1249–54 (1951) (explaining computation of time under the statute of limitations).

**25.** *John's Heating Serv. v. Lamb*, 129 P.3d 919, 923 (Alaska 2006) (internal quotation marks omitted).

**26.** *See generally Williams v. Williams*, 129 P.3d 428, 432 (Alaska 2006) (discussing the elements of equitable estoppel).

claims that Providence failed to disclose facts to him where it had a duty to do so:

> Providence withheld important facts that would have made [James] aware of the need to protect his rights by filing tort claims within two years of his wife's discharge from the hospital. Providence released [James's] wife into the custody of his stepdaughter, leading him to believe she was competent and had no serious mental or physical illnesses. Providence had a duty to inform [James] of his wife's mental state so that he could initiate appropriate guardianship proceedings to protect his wife.

But as Providence points out, it was legally obligated to not disclose the results of Helen's assessment to James without her written consent.[27]

James also relies on *Cikan v. ARCO Alaska, Inc.*[28] to support his contention that the superior court should have held an evidentiary hearing on the statute of limitations issue before dismissing James's complaint. In *Cikan*, we reversed the superior court's summary judgment order and remanded the case to the superior court to hold an evidentiary hearing to determine whether the statute of limitations on the plaintiff's claim was tolled

by her disputed mental incompetency.[29] We reasoned that when the issue of whether a summary judgment motion should be granted depends on resolving a factual dispute in order for the court to apply the statute of limitations, the court must ordinarily resolve the factual dispute at a preliminary evidentiary hearing in advance of trial because "the task of interpreting and applying a statute of limitations traditionally falls within the province of the courts."[30] But in this case there was no factual dispute that had to be resolved in a evidentiary hearing.[31]

Finally, James argues that the superior court erred in failing to acknowledge that Helen's tort claims were tolled by her mental incompetency. This argument, however, has no bearing on whether James properly stated a claim in his complaint. Rather, it concerns the possible claims that James sought to assert as Helen's co-conservator after he filed his motion for reconsideration.[32]

### B. James Fails To Allege a Breach of Contract Claim upon Which Relief Can Be Granted.

 The superior court reasoned that James's breach of contract claim could not

---

**27.** *See* AS 47.30.845 (providing that a patient's confidential health records may not be disclosed to a third person without the patient's written consent, unless the third person is among the persons covered by the statute).

**28.** 125 P.3d 335 (Alaska 2005).

**29.** *Id.* at 342.

**30.** *Id.* at 339.

**31.** James also contends that the superior court erred in dismissing his complaint because the superior court "fail[ed] to make a separate determination for each of the allegations in the complaint." But the superior court provided a full and well-reasoned explanation for its decision. James's argument that the dismissal was erroneous because he "alleged numerous damages in his complaint" is also unavailing. We have long recognized that to survive a Rule 12(b)(6) motion the plaintiff must properly plead all elements of the claim, not just the element of damages. *See Linck v. Barokas & Martin*, 667 P.2d 171, 173 & n. 4 (Alaska 1983).

**32.** James also argues that the superior court erred in denying his motion for a stay of the proceedings and for leave to amend his com-

plaint to add Helen as a party under Civil Rule 19(a) and to add her claims under Civil Rule 15(a). The superior court ordered that "[i]n light of the foregoing [dismissal of James's complaint for failure to state a claim and the order denying James's motion for reconsideration], the motion to stay this matter until 11–16–07 is denied as moot." James failed to file a copy of the amended complaint or even allude to which causes of action he intended to bring on Helen's behalf. But James's argument to add Helen as a party under Civil Rule 19 is difficult to comprehend given that as the plaintiff he had the discretion to determine the parties to his case. *See* 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 19.02[1] (3d ed.2003) (explaining that while plaintiffs generally have the discretion to determine the party structure of their actions and to use the permissive party joinder provisions of Rule 20, Rule 19 prescribes when other parties, absentees, and the courts themselves may override the autonomy of plaintiffs to structure the litigation). In any event, James waived this argument by failing to raise it below. *See Eagle v. State, Dep't of Revenue*, 153 P.3d 976, 981–82 (Alaska 2007).

survive because there was no legally binding contract between James and Providence regarding Helen's release. The superior court ruled that a third person cannot enter into a contract with a care provider to restrict the patient's freedom of movement if the third person is not in a custodial relationship with the patient. James argues that agency principles and the statutory provisions concerning vulnerable adults gave him the authority to contract with Providence for Helen's care. Providence responds that these arguments are untimely and thus waived.

Two well-established waiver principles apply to this case. First, "[w]e will not consider on appeal new arguments which (1) depend on new or controverted facts, (2) are not closely related to the appellant's arguments [in the superior court], and (3) could not have been gleaned from the pleadings, unless the new issue raised establishes plain error."[33] Second, we will not consider an issue raised for the first time in a motion for reconsideration.[34]

In his complaint, James did not allege circumstances suggesting the existence of an agency relationship nor did he assert that he was Helen's guardian when she checked into Providence for an assessment of her mental status. James also failed to make these arguments in opposing Providence's motion to dismiss. James first raised his vulnerable adult argument in his motion for reconsideration, asserting that statutory provisions concerning vulnerable adults are designed for the protection of people like himself and his wife and thus "should be deemed, as a matter of public policy, implied terms in the contract of care which was created between the hospital and [James]." Because James failed to

make this argument prior to his motion for reconsideration, it is waived.[35]

## V. CONCLUSION

Because James's claim for damages arising from the divorce action is precluded by our holding in *Chizmar v. Mackie*, because his tort claims are barred by the statute of limitations for tort causes of action, and because there was no legally binding contract between James and Providence concerning Helen's release, we AFFIRM the superior court's dismissal of James's complaint for failure to state a claim upon which relief can be granted.

---

**33.** *Kaiser v. Umialik Ins.*, 108 P.3d 876, 881 (Alaska 2005) (first alteration in original) (internal quotation marks and citation omitted).

**34.** *E.g.*, *Haines v. Cox*, 182 P.3d 1140, 1144 & n. 13 (Alaska 2008); *Stadnicky v. Southpark Terrace Homeowner's Ass'n*, 939 P.2d 403, 405 (Alaska 1997).

**35.** *See Stadnicky*, 939 P.2d at 405 ("An issue raised for the first time in a motion for reconsideration is not timely."). Even if this argument were timely, it is without merit. Although chapter 24 of title 47 provides the Department of Health and Social Services with the authority to appoint surrogate decision makers to obtain consent for vulnerable adults who are incapable of

consenting to the services that they need, a spouse is not entitled to automatically assume the role of a surrogate decision maker when, as is the case here, the health department had not sought the spouse's consent for services. *See* AS 47.24.016(a). James's agency argument is also both untimely and unavailing because if James had been acting as Helen's agent, he would have formed a contract between Helen and Providence that Helen could enforce, not James. *See* Restatement (Second) of Agency § 363 cmt. a (1958) ("The fact that an agent negotiates a contract for a principal does not enable him to maintain an action in his own name against the other party thereto for its breach....").