NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| LILY ANNISKETT, PERSONAL REPRESENTATIVE OF THE ESTATES OF DORCAS NEAKOK AND WARREN NEAKOK, | ) ) ) ) ) |
| Appellant, | ) ) ) |
| v. | ) ) |
| MARIE TRACEY, | ) ) ) |
| Appellee. | ) ) |

Supreme Court Nos. S-17398/17636
(Consolidated)

Superior Court Nos. 2BA-10-00041/
00042 PR/2BA-18-00247 CI
(Consolidated)

<u>MEMORANDUM OPINION
AND JUDGMENT</u>*

No. 1904 – July 13, 2022

| | |
|---|---|
| LILY ANNISKETT and MICHAEL NEAKOK, | ) ) ) |
| Appellants, | ) ) ) |
| v. | ) ) ) |
| ALICIA PORTER, WILLIAM TRACEY, and MARIE TRACEY, | ) ) ) ) |
| Appellees. | ) ) ) |

Appeals from the Superior Court of the State of Alaska, Second Judicial District, Utqiaġvik, Nelson Traverso, Judge.

---

\*　　Entered under Alaska Appellate Rule 214.

Appearances: Mark Lewis Nunn, Sr., Memphis, Tennessee, for Appellants. Jo A. Kuchle, Steven S. Hansen, and Kristina M. Miller, CSG, Inc., Fairbanks, for Appellee Marie Tracey. Michael A. Grisham, Dorsey & Whitney LLP, Anchorage, for Appellee Alicia Porter. No appearance by Appellee William Tracey.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

## I.    INTRODUCTION

Three sisters disputed various aspects of their parents' probate proceedings, including the disposition of their parents' stock in regional and village corporations.[1] The sisters entered into a settlement agreement in the probate proceedings resolving all pending disputes, including the dispute about their parents' stock, but one sister — appointed personal representative of the probate estates under the settlement agreement — later unsuccessfully attempted to set aside the settlement agreement and filed a separate lawsuit alleging conversion of the parents' stock. The superior court concluded that the probate settlement agreement should not be set aside and separately concluded that the lawsuit should be dismissed for failure to state a claim for relief. The dissident sister appeals, but we affirm the superior court's rulings.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Warren and Dorcas Neakok were Iñupiaq residents of Alaska's North Slope and shareholders in their village and regional corporations. They had three daughters, Nancy Leavitt, Lily Anniskett, and Marie Tracey.

---

[1]    The Alaska Native Claims Settlement Act (ANCSA) created village and regional corporations and authorized these corporations to issue shares "to each Native enrolled in the region" or village. 43 U.S.C. § 1606(g), 1607(c) (2018).

In 1996 Warren and Dorcas both made wills disposing of their ANCSA corporation stock in the Arctic Slope Regional Corporation (ASRC) and in Cully Corporation. In 2004 they completed testamentary disposition forms changing the distribution of their stock. Dorcas died in 2006 and Warren died in 2010.

## B.    Proceedings

### 1.    Initial probate proceedings

Lily applied to be appointed personal representative of her parents' estates. Marie did not consent to Lily's appointment and raised several objections, including that Lily had mishandled their parents' assets. Marie also asserted that she had been given ASRC and Cully Corporation shares by her parents before their respective deaths, and the stock was therefore not included in the estates.

The sisters reached an agreement on the record at a hearing a year later. Lily and Nancy agreed that the corporation shares were "taken care of outside th[e] probate matter" and to let each corporation decide how its stocks would be distributed. Marie would receive the ASRC shares from Dorcas and Marie's lawyer explained that Cully Corporation had informed her it would "honor whatever ASRC did with regards to stock transfers" and transfer stock to Marie. All of the sisters also agreed that Lily would be the personal representative. Marie's lawyer asked that Lily "affirm on the record . . . that she's comfortable with this agreement," which she did.

Later that year, in November 2012, Marie filed a letter with the court from American General Life Company. In the letter the insurance company requested reimbursement for $114,000 for an annuity it had continued to pay to Dorcas for five years after her death.

At a hearing in July 2013, Marie's lawyer asked the court to sign the order she had lodged the previous October memorializing the sisters' agreement from the March 2012 hearing. Both lawyers assured the court that the agreement was accurate,

but Lily interjected to ask about "the 150 shares [she was] supposed to get from [her] parents in this order." She asserted that she did not understand "what we're trying to do" and questioned whether "they [were] trying to take all of our shares from Cully Corporation and ASRC from my mom and dad."

After the court read the agreement into the record, Lily asked again about the ASRC shares because "the will . . . says all three of us get the ASRC shares." Marie's lawyer clarified that because Dorcas and Warren had "deeded the shares over to [Marie] prior to their deaths . . . their deeding . . . took precedence over the will." Marie confirmed that she had received the ASRC shares but not her father's Cully Corporation shares.

The court explained that it was "being asked simply to sign off on . . . what the family agreed to back in March of 2012." Lily, who was participating by telephone, told the court that although she was "very disappointed of what [was] happening . . . [she was] willing to sign [the agreement]." She reiterated that she was going to "go ahead and sign it and have [Marie] live happily ever after" and hung up. The court signed the order accepting the agreement *nunc pro tunc* to October 15, 2012 to enable the personal representative to address the "development of a creditor's claim."

Marie later filed a notice disclaiming the funds in her parents' bank accounts because of the creditor's demand by American General Life Company.

### 2. Motion to compel stock transfer and amended agreement

In May 2014 Marie filed a motion to compel the transfer of the Cully Corporation stocks. Cully Corporation entered a limited appearance disputing the court's jurisdiction to enforce the agreement and contesting the validity of the 2004 stock wills. After several hearings the parties revised their settlement agreement to recognize Cully Corporation's authority to direct the distribution of its stock and to authorize it to distribute the shares equally between the sisters according to the 1996 wills. In January

2015, the court signed an amended order incorporating the revised agreement, ordering Lily to give her Cully Corporation shares to Marie, and providing that Lily would continue to serve as personal representative.

### 3. Motion to set aside global resolution

In April 2018 — more than three years after the agreement was amended — Lily filed a motion based upon Alaska Civil Rule 60(b) to set aside the global resolution. Lily claimed that Marie and her lawyer Alicia Porter "pressured," "badger[ed,] and threaten[ed]" her to convey her ASRC stock to Marie and that Porter had wrongfully asserted that Marie had an interest in assets she had earlier disclaimed. Lily also claimed that she had been "ineffectively represented, [or] not represented at all" by her previous lawyers. Lily argued that the ASRC stock had never been part of any agreement and that she had conveyed the Cully Corporation stock based on an invalid stock will produced by undue influence.

Lily asserted that the court should set aside the global resolution under Rule 60(b)(5) and (6)[2] because of "extraordinary circumstances of oppressive conduct coupled with fraud by opposing counsel along with gross negligence of the attorneys who[] had previously represented [her]." She attached an affidavit detailing why she believed neither of her previous lawyers had provided her with adequate representation. And she asserted that she had been "in very bad physical condition."

Marie opposed Lily's motion. She argued that the sisters had settled in order to avoid trial on other issues including Lily's actions as Warren's guardian after

---

[2]      Alaska Civil Rule 60(b) authorizes the court to relieve a party from a final judgment or order if:  "(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

Dorcas's death, and that opening the case would expose Lily to liability for wasting Warren's resources and for elder abuse. And she pointed out that if Lily was dissatisfied with her lawyers' representation, the appropriate remedy would be a malpractice action. Marie argued that Lily had voluntarily agreed to settle all these matters and could not undo the agreement because "she now dislikes her attorney's recommendations."

Marie also argued that the motion was untimely.[3] She argued that Lily's current lawyer had been involved for two years and that his delay in filing the motion to set aside the agreement would prejudice Marie. Marie then advised the court that because she was "tired of continuing to battle," Lily could "keep her Cully Corporation shares" which she noted the Cully Corporation board had never transferred to Marie.

Lily replied, reiterating her previous claims and argued for the first time that the court had a "duty to protect" the interests of her children, who "object strongly to the conversion of the ASRC stocks." She argued that the lack of notice to them about the stock conveyance violated her children's due process rights.[4]

On May 25 Marie conveyed 50 ASRC shares back to Lily.

At a July evidentiary hearing on the motion to set aside the agreement Lily reiterated the arguments she made in her motions. Her lawyer called Marie as a witness and asked whether the reason she reconveyed ASRC shares to Lily was "because [she] knew those stocks didn't come under any of [their] agreements." Porter objected that Lily's lawyer was "functionally asking [Marie] to admit fraud" and the court sustained

---

[3] *See* Alaska R. Civ. P. 60(b) ("The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment . . .").

[4] Lily's son Michael later filed an affidavit with the court stating that Lily had given away stocks that were rightfully his under pressure from the lawyers in the case.

her objection on Fifth Amendment grounds. After additional testimony the court ended the hearing.

After the court requested additional briefing on Lily's motion to set aside, Marie, represented by new counsel, filed a brief arguing that the Rule 60(b) motion was untimely, and that even if it were timely it should be dismissed because it would be "an inappropriate remedy for [Lily's] imagined problems with the global resolution." Marie argued that Rule 60(b)(1) or (3) required any motion to be brought within one year of the judgment or order at issue; the original settlement in 2012 and its amendment in 2013 were years earlier. And she argued that a motion brought under subsection (b)(5) was "limited to final judgments and thus does not encompass interim orders, such as the Order for Global Resolution of Case."[5]

Lily argued that the court should set aside the settlement because res judicata was "merely a rule of discretionary authority . . . that should never be a bar in cases involving a settlement in which a party was ineffectively represented." She claimed that Porter pressured her to convey stock with "specious threats about suing over a false claim of undue influence" and that the court had a duty to protect her children's interests and to provide them notice because they objected to the conveyance of the ASRC stocks. And she argued that Marie had "engaged in bad faith conduct vitiating any agreement" and that the court should "order the stock to be reconveyed." Lily also claimed without elaboration that the case "involve[d] circumstances of fraud on the court" and that she was entitled to relief from the judgment under Rule 60(b)(6).

The standing master recommended denying the motion to set aside in March 2019. The master noted that Lily's argument that the agreement was formed by

---

[5]    Marie argued that the other claims were too "insufficiently articulated . . . to meaningfully respond to."

fraud was a claim under subsection (b)(3).[6] Because claims under that subsection needed to be brought within one year, the master concluded that Lily's motion was untimely because it was brought "more than 40 months" after the amended settlement was entered. And it found that the claim did not fall under any of the other subsections. Because Lily's motion was untimely under (b)(3) and "excluded from the scope of 60(b)(4)-(6)," the master recommended that the superior court deny the motion.

The superior court accepted the master's recommendation and issued an order denying the motion a month later. After finding that a Rule 60(b)(3) motion was time-barred, the court recognized that an exception could be made to set aside a judgment under subsection (b)(6) if there had been fraud upon the court. But the court found that neither Porter's alleged threats to sue nor Lily's lawyer's alleged failure to properly counsel Lily amounted to "fraud in the inducement of the settlement agreement."

Lily filed a motion for reconsideration. She argued that the court overlooked evidence from the evidentiary hearing in June, which she claimed violated her right to a meaningful hearing. And she alleged that Marie committed fraud and acted in bad faith and that the stock wills were improperly notarized by Marie's husband. She also argued that the court had unfairly ended the evidentiary hearing on the motion to set aside and that it should have recognized that her son was an interested party. The court denied Lily's motion for reconsideration in May 2019, finding that Lily had "not raised new relevant issues of law or fact for the court to consider."

---

[6]     Alaska Rule of Civil Procedure 60(b)(3) allows a judgment to be set aside for "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."

## C. Collateral Civil Complaint

After the July evidentiary hearing, Lily and her son Michael filed a civil complaint against Porter; Marie's husband, William Tracey; and Marie based on their conduct in the probate case. The complaint, filed in September 2018, alleged that Porter had "extorted, coerced and threatened" Lily with "bad faith civil litigation" unless she conveyed Warren and Dorcas' ASRC and Cully Corporation stock to Marie. It claimed that Lily had been forced to "endure prolonged litigation" with delays, additional transportation and lodging costs, and additional attorney's fees.

Based on the allegations in the complaint, Lily and Michael asserted that the Traceys and Porter had committed conversion of the stocks and that they were entitled to damages in excess of $10,000. They later amended the complaint to add Lily's former lawyer Jon Buchholdt as a defendant[7] and to include a second count alleging that the Traceys' and Porter's actions breached the covenant of good faith and fair dealing.

Porter argued in her answer that the complaint failed to state a cause of action upon which relief could be granted and followed up with a motion to dismiss the case. She argued that the claims in the complaint were an improper attempt to circumvent an ongoing probate case and not legally cognizable. Porter also argued that because she had no contract with Michael and Lily, they had no claim for breach of the implied covenant of good faith and fair dealing, as Alaska law does not recognize any generalized duty to avoid acting in bad faith outside of a contract. Porter also argued that the plaintiffs had not alleged facts that would amount to conversion. And finally she

---

[7] Buchholdt failed to appear and the court entered default against him but did not enter a judgment because "[t]here [were] no allegations in the complaint that explain[ed] Mr. Buchholdt's role or basis for liability upon which the court [could] issue a judgment."

asserted that the superior court did not have subject matter jurisdiction because the claims were based on actions in the probate case.

In their opposition to the motion to dismiss, Lily and Michael argued that the probate court lacked jurisdiction to address the ANCSA corporation stock. They rehashed many of the arguments from Lily's motion to set aside the global agreement, and asserted that Porter had worked in concert with Marie and her husband to perpetuate a fraudulent conversion of the stock and that Buchholdt was either complicit or had been negligent in his representation of Lily. Porter reiterated her position in reply.

The court granted the motion to dismiss. It found that the complaint had failed to allege any facts about "any conduct by Porter relevant to a tort of conversion" and that the only allegation against Marie's husband was "that he notarized a stock will, which he admits." And it found that the complaint had not pled any nonconclusory facts that would support a claim of conversion against Marie. The court dismissed the case with prejudice.

The court entered final judgment and granted the Traceys' and Porter's motions for attorney's fees. It found that the Traceys and Porter were the prevailing parties and were therefore entitled to attorney's fees under Civil Rule 82.[8] But the court rejected their argument that they were entitled to full fees because it was "not persuaded that the collateral attack was done with vexation or in bad faith."

Lily and Michael appeal the dismissal of their lawsuit. And Lily appeals the denial of her motion to set aside the global settlement in the probate case.

---

[8]     *See* Alaska R. Civ. P. 82(b)(2) ("In cases in which the prevailing party recovers no money judgment, the court . . . shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred.").

## III. STANDARD OF REVIEW

"We review orders denying Rule 60(b)(6) relief under the abuse of discretion standard."[9]

We review the superior court's grant of a motion to dismiss pursuant to Rule 12(b)(6) de novo, "construing the dismissed complaint liberally, and assuming the truth of the facts it alleges."[10] We view dismissals under Rule 12(b)(6) "with disfavor."[11] Dismissals under Rule 12(b)(6) "should only be granted on the rare occasion where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.' "[12]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion By Denying Lily's Motion To Set Aside The Global Agreement.

Lily argues that the superior court should have set aside the global agreement under Civil Rule 60(b)(5)-(6). She claims that Dorcas's Cully Corporation stock will was "facially fraudulent" and had been found to be fraudulent by the Cully Corporation. Lily argues that the court should have inquired about whether she had knowingly entered into the global agreement with the advice of counsel, because she gave "a confused and ambivalent statement" when the judge asked if she agreed. And she accuses Porter of "deceptive conduct, and trickery, and oppression" for allegedly

---

[9] *Morgan v. Morgan*, 143 P.3d 975, 976 (Alaska 2006).

[10] *Jacob v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 177 P.3d 1181, 1184 (Alaska 2008) (quoting *Lowell v. Hayes*, 117 P.3d 745, 750 (Alaska 2005)).

[11] *Id.* (quoting *Angnabooguk v. State*, 26 P.3d 447, 451 (Alaska 2001)).

[12] *Id.* (quoting *Angnabooguk*, 26 P.3d at 451).

failing to deliver a letter to a bank holding some of the estates' assets.[13]  Based on these allegations, Lily argues that the stock was obtained improperly and that the global resolution should be set aside under Alaska Rule of Civil Procedure 60(b)(5) and (6).

Rule 60(b) has six numbered subsections.[14]  Although Lily nominally brings her claims under subsections (5) and (6),[15] she alleges that she was induced to sign

---

[13]    Lily also argues that "reversal of th[e] court's prior approval of the global settlement" is not barred by res judicata, but neither the standing master nor the superior court relied on res judicata to deny her motion.

[14]    Civil Rule 60(b) allows relief from a judgment for the following reasons:

> (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

[15]    Lily makes only a passing reference to subsection (5), asserting that "[b]ecause the stock was obtained improperly and under the circumstances described above, this court has authority under Alaska Rule of Civil Procedure 60(b)(5) . . . to set aside the 'global resolution.' "  We are not obligated to consider arguments that are inadequately briefed. *Smallwood v. Cent. Peninsula Gen. Hosp., Inc.*, 227 P.3d 457, 460 (Alaska 2010) ("Failure to argue a point of law constitutes abandonment.").  But even if Lily had briefed it fully the claim has no merit.  Subsection (5) permits relief from judgment when "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." Alaska R. Civ.
(continued...)

the agreement by fraud. Therefore, her claims would arise under subsection (3), which provides for relief from judgment in the case of fraud, misrepresentation, or other misconduct.[16] Motions under Rule 60(b) "shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment or orders."[17] Thus, a request for relief from judgment for fraud or misrepresentation must be brought within a year.

The amended order in this case was entered on January 14, 2015, dated *nunc pro tunc* to November 25, 2014. The motion to set aside the global resolution was filed on April 17, 2018. Even using the date the order was actually signed, Lily filed her set-aside motion more than three years after the order. The motion is therefore time-barred under Rule 60(b)(3). And although Lily also relies on the catch-all provision of subsection (6), "[a] party may only obtain Rule 60(b)(6) relief if no other Rule 60(b) clause applies."[18] Lily's argument that the agreement was induced by fraud could have been brought under subsection (3) within one year. Because it was not, the motion was time-barred and the superior court did not abuse its discretion by denying it.

Lily's argument that her then-lawyer's failure to provide adequate assistance justifies setting aside the agreement is similarly unavailing. "Relief under 60(b)(6) is inappropriate when a party takes a deliberate action they later regret as a

---

[15] (...continued)
P. 60(b)(5). As the standing master noted, Lily "has not shown a change in circumstances, and the only ongoing term in the contract to enforce is Marie Tracey's continued non-opposition to Lily Anniskett's appointment as personal representative."

[16] Alaska R. Civ. P. 60(b)(3).

[17] Alaska R. Civ. P. 60(b).

[18] *Richard v. Boggs*, 162 P.3d 629, 635 (Alaska 2007).

mistake."[19] Lily stated on the record that she had already told her lawyer that she was "in agreement." The court then asked her to affirm that she agreed, and she did. Lily argues that at a previous hearing her lawyer "permitted Porter to deal directly with" her regarding transferring the Cully Corporation shares. But she does not explain how this affected the final agreement. And if her lawyer did fail to provide adequate representation, "the client's appropriate remedy is an action for malpractice."[20] The court did not abuse its discretion by denying Lily's motion to set aside the agreement based on her lawyer's conduct.[21]

## B. The Superior Court Did Not Violate Michael's Due Process Rights.

Lily claims that the court erred by failing to provide Michael notice of the probate proceedings. But Michael is not a party to the probate appeal.[22] "[G]enerally, a litigant lacks standing to assert the constitutional rights of another" unless the litigant can assert third-party standing.[23] Lily did not assert and does not appear to have third-

---

[19] *Hartland v. Hartland*, 777 P.2d 636, 645 (Alaska 1989).

[20] *Id.*

[21] Lily also argues that the agreement should be set aside because the case involved "circumstances of fraud on the court." Lily does not elaborate on what constituted fraud on the court. We do not need to consider arguments that are inadequately briefed. *Smallwood v. Cent. Peninsula Gen. Hosp., Inc.*, 227 P.3d 457, 460 (Alaska 2010).

[22] As Marie notes, "[t]he Appeal is brought by the Estates of Dorcas and Warren through Lilly [sic] Anniskett as Personal Representative. The appeal is signed by Mark Nunn as the lawyer for the appellant. Nowhere is Michael Neakok mentioned as a party."

[23] *Keller v. French*, 205 P.3d 299, 304 (Alaska 2009) (quoting *State ex rel. Dep'ts of Transp. & Labor v. Enserch Alaska Constr., Inc.*, 787 P.2d 624, 630 n.9 (Alaska 1989)).

party standing for Michael. Although this court has held that "[p]arents . . . may assert the rights of their minor children,"[24] Michael is not a minor.[25] Because Michael is not a party to this case and Lily does not have third-party standing to raise claims on his behalf, we need not consider whether the superior court violated Michael's due process rights.

### C.      The Superior Court Did Not Violate Lily's Due Process Rights By Terminating The July Evidentiary Hearing.

Lily argues that "[t]he trial court's refusal to allow [her] to be fully heard, and to make fully informed examination of [Marie and Porter] . . . violated [her] right to a meaningful hearing." Although a court generally must hold an evidentiary hearing on a Rule 60(b) motion if there are facts in dispute, failure to hold a hearing requires reversal only if the party that requested a hearing demonstrates prejudice.[26] Lily's brief does not describe how her rights were violated, but her motion for reconsideration alleged that Marie was "teetering on the admission of fraud" when the evidentiary portion of the hearing ended. As Marie notes, "it is unclear how any such facts could be relevant to the court's determination [of the 60(b) motion], given Lily's failure to bring such motion in a timely period." Because any motion for relief from judgment under Rule 60(b) based on fraud would have been untimely, ending the hearing did not prejudice Lily and therefore did not violate her due process rights.[27]

---

[24]      *Gilbert M. v. State*, 139 P.3d 581, 587 (Alaska 2006).

[25]      Dorcas's 1984 will mentions Michael by name; therefore he must have been at least 28 at the time the initial agreement was signed in 2012.

[26]      *Stinson v. Holder*, 996 P.2d 1238, 1242 (Alaska 2000).

[27]      Lily also argues that the court violated her due process rights by "refusing to find the fraud exception to the attorney client privilege." But Lily does not elaborate

(continued...)

**D.      The Court Did Not Err By Exercising Subject Matter Jurisdiction Over The Agreement.**

Lily argues that "the trial court erred when it exercised subject matter [jurisdiction] because the case did not involve intestate succession and section 705 acknowledges ANCSA corporations' exclusive jurisdiction for probate of the stocks." Lily is correct that stock in ANCSA corporations does not pass through probate.[28]  But superior courts do have jurisdiction if there is a dispute over who is entitled to inherit the stock.[29]  And in this case, the probate court was not exercising jurisdiction over the transfer of stock; it was ratifying the agreement reached by Dorcas and Warren's daughters that Lily would transfer stock to Marie, and Marie would agree to Lily's appointment as personal representative.

**E.      The Superior Court Did Not Err By Dismissing Lily And Michael's Collateral Suit.**

Lily and Michael argue that the superior court's dismissal was in error because they "pled facts specific to the conversion of the [N]ative corporation stocks, fraudulent inducement, and violation of the covenant of good faith and fair dealing . . . includ[ing] coercive pressure combined with a nonsensical elder fraud threat that induced

---

[27]      (...continued) further and therefore this court need not consider it.  *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal.").

[28]      *See* AS 13.16.705(a) (providing that stock of corporations organized under ANCSA "is not subject to probate nor shall its value be considered in determining the value of an estate or allowance under this title," but authorizing an independent superior court action "[i]n case of dispute as to the person entitled to receive the stock").

[29]      *Id.* ("In case of dispute as to the person entitled to receive the stock, a person claiming ownership may bring an independent action in the superior court.").

[Lily] to capitulate to Porter and Marie Tracey's demands."[30]  We view dismissals for failure to state a claim under Civil Rule 12(b)(6) "with disfavor,"[31] directing that they

> "should only be granted on the rare occasion where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." In other words, "the complaint need only allege a set of facts consistent with and appropriate to some enforceable cause of action."[32]

Even under this lenient pleading standard, Lily and Michael failed to allege facts sufficient to support a claim against Marie or Porter for conversion or breach of the covenant of good faith and fair dealing.  In addition, Lily and Michael's claim against Marie fails because of claim preclusion.

### 1.  The conversion claim did not sufficiently allege the required element of fraud or duress.

In their complaint to the superior court, Lily and Michael alleged that Marie obtained shares that rightfully belonged to Lily through "trickery, fraud, forgery, undue influence and criminal misuse of . . . [a] notary."  These allegations could begin to state

---

[30]    They also argue that Lily's "own attorney at the time, Jon Buchholdt, participated in the coercive pressuring to convey" the stocks.  Buchholdt is no longer a party to the case; default was entered against him in April 2019.  We also note that Buchholdt was not Lily's lawyer at the time she entered the agreement.  The agreement was reached in March 2012; Buchholdt did not enter his appearance until 2014.

[31]    *Clemensen v. Providence Alaska Med. Ctr.*, 203 P.3d 1148, 1151 (Alaska 2009) (quoting *Jacob v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 177 P.3d 1181, 1184 (Alaska 2008)).

[32]    *Id.* (first quoting *Jacob*, 177 P.3d at 1184, then quoting *Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 128 (Alaska 2000)).

a claim for conversion.[33]  But Lily had already argued that the settlement agreement should be set aside based on allegedly fraudulent notarization of wills in the probate matter, so a claim for conversion against the Traceys based on that allegation is barred by claim preclusion.[34]

Claim preclusion "provides that a final judgment in a prior action bars a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, [and] (3) in a dispute between the same parties (or their privies) about the same cause of action."[35]  Lily and Michael's complaint alleged that William Tracey "executed the notary for Dorcas Neakok's and Warren Neakok's signature[s] on their respective stock wills" one year after Dorcas and Warren had signed the documents.  Their claim that allegedly fraudulent conduct induced the settlement agreement requiring the transfer of shares from Lily to Marie is the same both in their motion to set aside the settlement in the probate matter and in the conversion suit.  Lily was a party to the original lawsuit and brought the complaint against Marie Tracey.  The issue was resolved by a final judgment on the merits in the probate case when the

---

[33]     To establish a claim for conversion, a plaintiff must prove:

> (1) that she had a possessory interest in the property; (2) that the defendant interfered with the plaintiff's right to possess the property; (3) that the defendant intended to interfere with plaintiff's possession; and (4) that the defendant's act was the legal cause of the plaintiff's loss of the property.

*Silvers v. Silvers*, 999 P.2d 786, 793 (Alaska 2000).

[34]     Although this defense was not raised by the parties, we may affirm the superior court on any basis supported by the record. *Ennen v. Integon Indem. Corp.*, 268 P.3d 277, 289 (Alaska 2012).

[35]     *Sykes v. Lawless*, 474 P.3d 636, 642 (Alaska 2020) (quoting *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 166 (Alaska 1997)).

superior court denied Lily's motion to set aside the agreement. Therefore, Lily is precluded from relitigating the issue.

Porter, as Marie Tracey's attorney, was neither party to the previous suit nor was she in privity with the Traceys. Privity serves to ensure that a "non-party has had adequate notice and opportunity to be heard" to protect his or her rights and interests in prior litigation.[36] Privity exists where "the non-party (1) substantially participated in the control of a party's presentation in the adjudication or had an opportunity to do so; (2) agreed to be bound by the adjudication between the parties; or (3) was represented by a party in a capacity such as trustee, agent, or executor."[37] None of these criteria applied to Porter, so the claim against her cannot be barred by claim preclusion.

However, Lily and Michael failed to allege non-conclusory facts to make a prima facie case for conversion against Porter under Rule 12(b)(6). They did not provide any specific allegations of fraud or duress to support their claim.[38] We therefore affirm the superior court's dismissal of the conversion claim against Porter. And because Lily and Michael's complaint similarly contained no specific allegations of fraud or duress besides the claim-precluded notarization allegation, we affirm the dismissal of the conversion claim against the Traceys.

---

[36] *Stewart v. Elliott*, 239 P.3d 1236, 1241 (Alaska 2010) (quoting *Alaska Foods, Inc. v. Nichiro Gyogyo Kaisha, Ltd.*, 768 P.2d 117, 121 (Alaska 1989)).

[37] *Id.* (quoting *Powers v. United Servs. Auto. Ass'n*, 6 P.3d 294, 298 (Alaska 2000)).

[38] *See* RESTATEMENT (SECOND) OF TORTS § 221 (AM. L. INST. 1965) (explaining that intentional dispossession may be committed by "obtaining possession of a chattel from another by fraud or duress").

Alaska law requires that

[t]o establish a claim for conversion, the plaintiff must prove (1) that she had a possessory interest in the property; (2) that the defendant interfered with the plaintiff's right to possess the property; (3) that the defendant intended to interfere with plaintiff's possession; and (4) that the defendant's act was the legal cause of the plaintiff's loss of the property.[39]

The Restatement (Second) of Torts § 221 explains that the intentional dispossession may be committed by "obtaining possession of a chattel from another by fraud or duress."[40] Comment d to § 221 further explains that "fraudulent representations [which] induce[] another to surrender the possession of a chattel" can also constitute dispossession.[41]

Civil Rule 9(b) requires that an allegation of fraud be pled with particularity. This particularity standard "is not high"[42] and merely "requires a claim of fraud to specify the time and place where the fraud occurred."[43] But there must be something more than "recit[ing] without specificity that fraud existed."[44] Lily and Michael's complaint alleged only that Porter "extorted, coerced and threatened" Lily "with threats of bad faith civil litigation" in November 2014. There were no allegations of misrepresentations of fact or law which could constitute fraud.

---

[39] *Silvers v. Silvers*, 999 P.2d 786, 793 (Alaska 2000).

[40] RESTATEMENT (SECOND) OF TORTS § 221 (AM. L. INST. 1965).

[41] *Id.* § 221 cmt. d.

[42] *Asher v. Alkan Shelter, LLC*, 212 P.3d 772, 778 (Alaska 2009), *abrogated on other grounds by Shaffer v. Bellows*, 260 P.3d 1064, 1068 (Alaska 2011).

[43] *Id.* (quoting *Williams v. Engen*, 80 P.3d 745, 750 (Alaska 2003)).

[44] *Id.* (quoting *Williams*, 80 P.3d at 750).

Lily and Michael's complaint against Porter could be interpreted to allege that the settlement agreement was induced by duress. "[D]uress generally requires a threat that arouses such a fear as to preclude a party from exercising free will and judgment . . . ."[45] Lily and Michael alleged that Porter "extorted, coerced, and threatened [Lily] with threats of bad faith civil litigation." But the mere *threat* of a lawsuit is insufficient. We have not previously ruled on this issue, but the rulings of courts in other jurisdictions provide persuasive guidance.[46] A party's statement of intent to file a lawsuit, even if such a suit lacks merit, does not constitute duress unless accompanied by conduct which itself would be illegal or an abuse of the judicial process.[47] Because Lily and Michael's conversion claim against Porter failed to allege any nonconclusory

---

[45] *Mullins v. Oates*, 179 P.3d 930, 937 (Alaska 2008) (quoting *Crane v. Crane*, 986 P.2d 881, 887 (Alaska 1999)).

[46] *See, e.g.*, *Stoddard v. Stoddard*, 641 F.2d 812, 816 (9th Cir. 1981) (finding a party's threat to sue on a prior agreement "legally insufficient to constitute duress" and affirming district court's finding that settlement agreement was enforceable); *McMahan v. Greenwood*, 108 S.W.3d 467, 482 (Tex. Ct. App. 2003) ("[T]he threat to institute a civil suit or even the actual institution of a suit does not, as a matter of law, constitute duress."); *St. Bernard Sav. & Loan Ass'n v. Cella*, 856 F. Supp. 1166, 1174 (E.D. La. 1994) ("Louisiana law holds that threats to file suit, that is, resort to legal process to enforce one's rights is not actionable duress, whether or not the threatening party's legal rights are meritorious.").

[47] *See In re MBM Ent., LLC*, 531 B.R. 363, 410 (Bankr. S.D.N.Y. 2015) ("[A] threat to resort to civil litigation or legal remedies does not constitute duress, since '[i]t is never duress to threaten to do what one has a legal right to do.' On the other hand, a threat to give false testimony or to allege an unfounded claim may constitute duress." (second alteration in original) (quoting *Citibank, Nat'l Ass'n v. London*, 526 F. Supp. 793, 803 (S.D. Tex. 1981))); *see also* 17A C.J.S. Contracts § 252 (2021) ("Unless there is involved some actual or threatened abuse of process, the threat of civil litigation does not constitute duress.").

facts that could support an action for conversion or duress, we affirm the superior court's dismissal under Rule 12(b)(6) for failure to state a claim.[48]

Likewise, other than the claim-precluded allegation of fraudulent notarization, Lily and Michael's conversion complaint against the Traceys did not describe with particularity acts that could amount to a claim for fraud. The complaint contained the nebulous claim that "from July 2016 until approximately March of 2018, Defendants acted in concert to further the conversion of funds that had been disclaimed by Defendant Marie Tracey in August of 2013," but it failed to describe what actions were taken. The complaint also included the allegation that Marie lied under oath in a 2018 evidentiary hearing, but did not explain how her " 'material' false statements" relate to a conversion which would have occurred over ten years earlier. Lily and Michael argue in their brief that the Traceys "include[d] a bad faith claim on . . . previously disclaimed funds and elder fraud litigation," which could be interpreted as an allegation of fraud (in the sense of misrepresentation) or of duress. However, these

---

[48] Lily and Michael's complaint could also be interpreted to allege that Porter's "bad faith litigation" amounted to the tort of wrongful use of civil proceedings. "One who takes an active part in the initiation, continuation or procurement of civil proceedings against another" is liable for this tort if the person "acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and . . . the proceedings have terminated in favor of the person against whom they are brought." RESTATEMENT (SECOND) OF TORTS § 674 (AM. L. INST. 1977). But the Restatement clarifies that an attorney is not liable, "even if he has no probable cause and is convinced that his client's claim is unfounded, . . . if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim." *Id.* § 674 cmt. d. The complaint does not meet the elements of the tort, as the mere *threat* of litigation does not amount to the wrongful use of civil proceedings under this definition and the complaint does not allege that the threatened litigation was without probable cause and for a primarily non-adjudicatory purpose.

unspecific allegations do not meet the requirements of Rule 9(b) to plead fraud, and threats of litigation without more do not constitute duress.

> **2.    The complaint does not sufficiently allege a breach of the covenant of good faith and fair dealing to survive dismissal.**

The superior court found that Lily and Michael did not sufficiently plead their claim that the Traceys and Porter had breached the covenant of good faith and fair dealing, and that it could not therefore address the claim. The amended complaint states only that "[d]efendants' conduct constituted a breach of the covenant of good faith and fair dealing." While it is true that "[t]he covenant of good faith and fair dealing is implied in every contract in order to effectuate the reasonable expectations of the parties to the agreement,"[49] the superior court is correct in pointing out that the covenant can "only be enforced against parties to the contract at issue." Because Porter was not a party to the settlement agreement, the covenant does not apply to her.

The complaint also does not support an allegation that Marie and William Tracey breached the implied covenant of good faith and fair dealing. The purpose of the covenant is to "effectuate the reasonable expectations of the parties to the agreement."[50] The conduct alleged in the complaint related to the formation of the agreement, not to effectuating the agreement once it was created. And as the superior court noted, the complaint contained no allegations that Marie and William failed to live up to their

---

[49]    *Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Motors Corp.*, 221 P.3d 977, 992 (Alaska 2009) (alteration in original) (quoting *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997)).

[50]    *Id.* ("The covenant includes subjective and objective elements, both of which must be satisfied. The subjective element 'prohibits one party from acting to deprive the other of the benefit of the contract.' The objective element 'requires each party to act in a manner that a reasonable person would regard as fair.' " (quoting *Ramsey*, 936 P.2d at 133)).

contractual obligations. The superior court did not err by dismissing the covenant of good faith and fair dealing claim.

### 3. The court did not violate Lily and Michael's due process rights.

Lily and Michael argue that not allowing the case to proceed to a jury trial violated their state and federal due process rights. But a party's due process rights are not violated as long as the court complies with the requirements of Civil Rule 12(b)(6).[51] The superior court analyzed Lily and Michael's claims and found that the complaint "fail[ed] to allege even a single set of facts consistent with and appropriate to some enforceable cause of action." The superior court provided Lily and Michael the process they were due by following Rule 12(b)(6) and concluding that their complaint failed to state a claim.[52]

### F. The Court Did Not Err By Awarding The Traceys And Porter Attorney's Fees In The Conversion Suit.

Lily and Michael argue that the court erred by awarding attorney's fees because Marie's fees were higher than they should have been because of her conduct during the probate litigation. Marie's conduct during the probate litigation is irrelevant to the conversion suit. And as Porter and the Traceys both argue, Lily and Michael failed to appeal either the superior court's prevailing party determination or its finding that the

---

[51] *Rae v. State, Dep't of Corr.*, 407 P.3d 474, 479 (Alaska 2017) ("When the superior court properly concluded, as a matter of law, that [the] complaint failed to state a claim for relief under Civil Rule 12(b)(6), nothing remained to be tried. The court did not violate [the plaintiff's] right to a trial.").

[52] The appellants also argue that they pled fraud with sufficient particularity to comply with Rule 9(b). But because we hold that the appellants' fraud arguments are precluded, this argument is irrelevant.

fees were reasonable, which are the two relevant variables under Civil Rule 82.[53] Therefore, there is no basis to conclude that the superior court abused its discretion by awarding attorney's fees under Rule 82.

## V.    CONCLUSION

The superior court's denial of Lily's motion to set aside the settlement, its dismissal of Lily and Michael's conversion complaint, and its award of attorney's fees for the conversion suit are AFFIRMED.

---

[53]    Alaska R. Civ. P. 82(b)(2) ("In cases in which the prevailing party recovers no money judgment, the court . . . shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred.").